UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JIMMIE E. WILLIAMS,

        Petitioner,

v.                                                Case No. 6:12-cv-48-Orl-31KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

**ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. No. 1).   Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.   Respondents filed a response arguing that the petition was untimely.   The Court concluded otherwise and directed Respondents to file supplemental responses to the petition for writ of habeas corpus, which they did (Doc. Nos. 18 & 22).   Thereafter, Petitioner filed a reply to the second supplemental response (Doc. No. 23).   For the following reasons, the petition is denied.

I.    *Factual and Procedural Background*

Petitioner was charged by information in 05-2005-cf-39472 with fraudulent use of a credit card; in 05-2006-cf-68045 with felony driving while license revoked; in 05-2006-cf-67983 with burglary of a structure and possession of burglary tools; in 05-2007-cf-49098, which was consolidated with 05-2007-cf-49587, with two counts of burglary of a

structure, possession of burglary tools, and petit theft; and in 05-2007-cf-49376 with robbery with a weapon and battery.   Petitioner entered a plea of no contest pursuant to plea agreements to all charges in all cases but to the lesser offense of robbery in 05-2007-cf-49376.   The trial court sentenced Petitioner to 273-days for battery and petit theft, five-year terms of imprisonment for fraudulent use of a credit card and felony driving while license revoked, ten-year terms of imprisonment for the three burglary of a structure and two possession of burglary tools convictions, and to a twenty-year term of imprisonment as a habitual felony offender ("HFO") for robbery, with a fifteen-year minimum mandatory as a prison releasee reoffender, with all sentences to run concurrently.

Petitioner appealed.   The Fifth District Court of Appeals of Florida reversed because the trial court failed to inform Petitioner about the potential loss of gain time as a result of the HFO designation.   (App. E at 2.)   The appellate court remanded the case to the trial court with instructions to permit the State the option of vacating the HFO portion of the sentences or allowing Petitioner to withdraw his plea in all five cases.   *Id.* On remand, the State opted to strike the HFO portion of the sentence.   The trial court sentenced Petitioner to concurrent five-year terms of imprisonment for the fraudulent use of a credit card, felony driving while license revoked, three burglary of a structure, and two possession of burglary tools convictions and to a fifteen-year term of imprisonment as a prison releasee reoffender for the robbery conviction.   The trial court ordered the fifteen-year sentence to be served consecutive to the five-year terms of

imprisonment.

Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

While his appeal was pending, Petitioner filed a *pro se* motion to correct an illegal sentence.   The trial court struck the motion as null because Petitioner was represented by counsel.   (App. L.)

Petitioner filed a state habeas petition.   (App. M.)   The Fifth District Court of Appeal of Florida summarily denied the motion.   (App. O.)

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.   (App. P.)   The state court denied the motion.   (App. Q.) Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

## II.   *Legal Standards*

### A.   *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   The phrase "clearly established Federal law," encompasses only the

3

holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

4

**B.      Standard for Ineffective Assistance of Counsel**

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]  *Id.* at 687-88.   The prejudice requirement of the *Strickland* inquiry is modified when the claim is a challenge to a guilty plea based on ineffective assistance.   *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).   To satisfy the prejudice requirement in such claims, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   *Id.* at 59.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.   *Strickland*, 466 U.S. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.1989).   As

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of

counsel:

> has nothing to do with what the best lawyers would have done. Nor is the
> test even what most good lawyers would have done. We ask only whether
> some reasonable lawyer at the trial could have acted, in the circumstances,
> as defense counsel acted at trial. Courts also should at the start presume
> effectiveness and should always avoid second guessing with the benefit of
> hindsight.   *Strickland* encourages reviewing courts to allow lawyers broad
> discretion to represent their clients by pursuing their own strategy. We are
> not interested in grading lawyers' performances; we are interested in
> whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).   Under

those rules and presumptions, "the cases in which habeas petitioners can properly prevail

on the ground of ineffective assistance of counsel are few and far between."   *Rogers v.*

*Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

III.   *Analysis*

A.   *Claim One*

Petitioner asserts that counsel rendered ineffective assistance by failing to

investigate.   In support of this claim, Petitioner contends that counsel failed to interview

Lisa Williams ("Williams"), Jennifer Clayton ("Clayton"), Cassandra Gray ("Gray"), and

Alfred Jones ("Jones"), all of whom would have testified that Petitioner was at his sister's

home at the time of the robbery.   Petitioner also complains that counsel failed to depose

Asacia Laford ("Laford") and Nicole Cloutier ("Cloutier"), the victims of the robbery.

Petitioner further maintains that counsel failed to interview his medical doctor who

would have testified that it was physically improbable that Petitioner could have committed the robbery given his injuries.

Petitioner raised this claim in his Rule 3.850 motion.   The state court denied the claim pursuant to *Strickland.*   (App. Q at 3-4.)   The state court reasoned that counsel listed Williams, Gray, and Jones on Petitioner's Notice of Alibi and his Witness List filed with the court and further filed a notice to take the depositions of these witnesses.   *Id.* at 3.   The court also noted that counsel had access to Laford and Cloutier's statements to police.   *Id.*   The court determined, therefore, that counsel either took the depositions or intended to take the depositions of Williams, Gray, and Jones and was aware of the testimony that would be given by Laford and Cloutier before Petitioner entered his plea. *Id.*   Finally, the court reasoned that Petitioner affirmed that he understood at the time he entered his plea that he would be giving up the right to call witnesses to testify and present defenses.   *Id*. at 4.

Petitioner has not established that the state court's denial of this claim is contrary to, or an unreasonable application of, *Strickland*.   The record reflects that counsel filed a Notice of Alibi, Witness List, and Notice of Taking Depositions, all of which included Williams, Gray, and Jones.   (App. A at 209, 211; App. Q, Ex. H.)   Thus, counsel clearly investigated potential witnesses and either took their depositions or planned to do so. Petitioner, therefore, has not shown that counsel rendered deficient performance by failing to investigate.

7

Additionally, at the plea hearing, Petitioner told the court that he had witnesses willing to testify for him, no one forced him to enter the plea, and he understood he was giving up the right to call witnesses by entering the plea. (App. A at 7, 13-15.) The prosecution further advised the court that Laford and Cloutier had identified Petitioner as the perpetrator and that a videotape of the incident showed Petitioner committing the offense. *Id*. at 20-21. In light of Petitioner's representations to the court and the evidence against him, Petitioner has not shown that a reasonable probability exists that he would not have entered a plea and proceeded to trial, on among other charges the offense of robbery with a weapon which carried a potential life sentence, even assuming counsel failed to investigate these witnesses. Consequently, claim one is denied pursuant to section 2254(d).

### B.    *Claims Two and Four*

In claim four, Petitioner contends that the State failed to disclose exculpatory evidence to him. Petitioner asserts in claim two that "[t]he State of Florida violated [his] due process rights when on remand he was not allowed to withdraw his plea once the original terms were invalidated by the District Court of Appeals." (Doc. No. 1 at 5.) In support of the claim, Petitioner argues:

> Once the District Court ruled that the Trial Court could not utilize the HFO enhancement, they became restricted to 3 five (5) year concurrent terms, and fifteen (15) years PRR, running concurrently. This [is] the only legal sentence structure [that] would comport with the terms of the plea agreement. . . .

8

> The State chose to change the terms on [sic] the agreement unilaterally.   The Petitioner therefore should have been granted the opportunity to withdraw his plea.
>
> The original plea agreement dated August 29, 2007 clearly stated "*cap of 20 years with minimum mandatory of 15 years as PRR.   Concurrent all cases & counts and concurrent with any active sentence.*"   There is no confusion on the fact the plea agreement required concurrent sentences.

*Id.* at 6 (emphasis in original).   Likewise, in his memorandum in support of the habeas petition, Petitioner contends that the restructured sentence imposed by the trial court on remand changed the terms of the plea agreement substantially, the State breached the terms of the plea agreement, and counsel was ineffective for failing to object to the due process violation.   (Doc. No. 2 at 15-20.)

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.   28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)     the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)     (i)     there is an absence of available State corrective process; or
>
> (ii)     circumstances exist that render such process

9

ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.   *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court.   *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."   *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted).   The Supreme Court of the United States has observed that "Congress surely meant that exhaustion be serious and meaningful."   *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).   Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court.   Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address

and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Petitioner did not raise claim four in the state court.   Furthermore, the record reflects that Petitioner argued on direct appeal from his resentencing that in accordance with Florida law, he should have been allowed the option of withdrawing his plea or being resentenced on remand.   (App. H. at 4-6.)   However, as asserted in ground two of the instant petition, Petitioner never argued in the state court that the State breached the plea agreement or that a due process violation resulted from the imposition of a consecutive sentence.   Petitioner also did not cite any federal law in support of his claim on appeal.   Thus, claims two and four were not exhausted in the state court.   Therefore, they are procedurally barred from review by this Court absent an exception to the procedural default bar.

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.   *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).   The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually

innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).   Petitioner has neither alleged nor shown cause nor prejudice that would excuse any procedural default.   Likewise, he has not shown the applicability of the actual innocence exception.   A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar.   Therefore, claims two and four are procedurally barred from review.

### C.   *Claim Three*

Petitioner maintains that counsel rendered ineffective assistance by failing to consider his mental health and bring the matter to the trial court's attention prior to the entry of the plea.   In support of this claim, Petitioner notes that he had been diagnosed with depression, bipolar disorder, anxiety disorder, and had suffered a major head injury prior to entering his plea.

Petitioner raised this claim in his Rule 3.850 motion.   In denying relief, the state court reasoned that Petitioner failed to assert that "his attorney had any reason to believe that he was unable to consult with his attorney or that he did not have a rational or factual understanding of the pending proceeding."   (App. Q at 5.)   The state court also noted that Petitioner admitted in his Rule 3.850 motion that he consulted with his attorney regarding potential alibi witnesses.   *Id.* at 11.   The state court determined, therefore, that there was no basis to find that counsel should have requested a competency hearing. *Id.*   The state court further determined that Petitioner understood his decision to enter a plea of no contest and the potential consequences if he entered the plea or proceeded to

12

trial as evidenced by the plea transcript.   *Id*. at 5-6.   The state court concluded that Petitioner was competent at the time he entered the plea and no reason existed to believe a competency evaluation was needed.   *Id*. at 11.

A criminal defendant must be mentally competent to stand trial.[2]   *Drope v. Missouri*, 420 U.S. 162 (1975).   "The legal test for mental competency is whether, at the time of trial and sentencing, the petitioner had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he had 'a rational as well as factual understanding of the proceedings against him.'"   *Adams v. Wainwright*, 764 F.2d 1356, 1360 (11th Cir. 1985) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

In analyzing a claim that counsel rendered ineffective assistance by failing to obtain a psychological examination to assess the defendant's competency to stand trial or otherwise conduct a defense, courts must consider whether a reasonable attorney should have been on notice that such an exam was necessary.   *See, e.g., Devier v. Zant,* 3 F.3d 1445, 1451 (11th Cir. 1993) (concluding that "the failure of [the defendant's] attorneys to introduce psychological evidence as to how [the defendant's] general mental status affected the voluntariness of his confession does not amount to ineffective assistance of

---

[2] The competency standard for pleading guilty is the same as the competency standard for standing trial.   *Godinez v. Moran*, 509 U.S. 389 (1993); *Stinson v. Wainwright*, 710 F.2d 743, 745 (11th Cir. 1983); *Malinaukas v. United States*, 505 F.2d 649, 654 (5th Cir. 1974).

counsel"). Moreover, to establish prejudice resulting from counsel's failure to investigate and pursue a claim of incompetency, the defendant must demonstrate that "a real, substantial, and legitimate doubt" existed concerning his mental competency at the time of his trial. *Adams*, 764 F.2d at 1367 (concluding that "[s]ince the requisite doubt has not and apparently could not have then been raised, the attorney's conduct in investigating and his decision not to pursue a claim of incompetency did not result in prejudice"); *see also Oats v. Singletary,* 141 F.3d 1018, 1025 (11th Cir. 1998) (concluding that the defendant failed to demonstrate prejudice based on counsel's failure to adequately argue he was incompetent to proceed because the defendant failed to show that "there [was] a reasonable probability that the trial judge would have determined that [he] was incompetent to stand trial").

The record reflects that at the plea hearing, defense counsel summarized the potential sentences Petitioner faced if convicted after which Petitioner expressed concern about his potential sentences. (App. A at 5-7.) Petitioner additionally expressed concern to the trial judge about proceeding to trial. *Id*. at 7-9. Petitioner told the court that he understood the sentences to which he was subject under the plea agreement and indicated he understood the rights he was foregoing by entering the plea. *Id*. at 12-15. Petitioner affirmed that he had read the plea agreement and understood it. *Id*. at 13, 23.

The Court concludes that the state court's denial of this claim is supported by the record. The state court's finding that Petitioner failed to demonstrate that he was not competent to enter a plea is a factual finding entitled to a presumption of correctness.

14

*See, e.g., Oats*, 141 F.3d at 1025 (citing *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); and *Maggio v. Fulford*, 462 U.S. 111, 117 (1983)). Petitioner has not established that a real, substantial, and legitimate doubt existed concerning his mental competency at the time of his plea hearing. Petitioner admitted in his Rule 3.850 motion that prior to his plea, he repeatedly told counsel he had alibi witnesses, where the witnesses were located, and the facts to which they would testify. (App. P at 6.) Thus, Petitioner clearly was able to consult with counsel with a reasonable degree of rational understanding. Furthermore, Petitioner affirmed that he understood the plea agreement and the rights he was foregoing by entering the plea. Petitioner, therefore, has not demonstrated that counsel was deficient for failing to consider his mental health and raise the issue with the court or request a competency evaluation nor has he shown that prejudice resulted from counsel's failure to do so. Accordingly, claim three is denied pursuant to section 2254(d).[3]

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## *IV. Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the

---

[3] To the extent Petitioner may have intended to raise any other allegation of ineffective assistance of counsel previously raised in the state court in claim three, he has not established that the state court's denial of the claim is contrary to, or an unreasonable application of, *Strickland*.

Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).    To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009).    When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.    Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable.    Petitioner has failed to make a substantial showing of the denial of a constitutional right.    Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.    The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Jimmie E. Williams is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      Petitioner is **DENIED** a Certificate of Appealability.

3.      The Clerk of the Court is directed to enter judgment accordingly and close

this case.

**DONE AND ORDERED** in Orlando, Florida, this 8th day of September, 2014.

<div align="right">

_____

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

</div>

Copies to:
Counsel of Record
Jimmie E. Williams

<div align="center">17</div>